J. KUPAU, Tax Collector, *vs.* H. P. RICHARDS.

ASSUMPSIT. BEFORE MCCULLY, J.

APRIL TERM, 1879.

Under §513, Civil Code, exempting from personal taxes "all clergymen of any Christian denomination regularly engaged in their vocation:" held, that a Mormon Minister is entitled to the exemption.

DECISION OF MCCULLY, J.

Assumpsit for $5 for defendant's personal taxes, for 1878. By appeal from judgment of the District Court of Koolauloa, and tried by the Court without a jury. The only matter in controversy was if the defendant be exempt under this provision found in Section 513 of the Civil Code, viz.: "The following persons shall be exempt from personal taxes: All clergymen of any Christian denomination regularly engaged in their vocation."

The defendant gave the following testimony: "I am a minister or clergyman of the Church of Jesus Christ of Latter Day Saints, and was in the exercise of that vocation in July last (date of assessment) in Koolauloa, Island of Oahu; I profess

the doctrines of the Christian religion; I do not know of any tax being assessed on our church sites; the Church at Waikiki and that of Honolulu have not been taxed, nor that of Laie; I never heard of a church site of our denomination being taxed; our creed is shown in this pamphlet (quoted below) ; we are not authorized to practice polygamy in the Hawaiian Islands; I am in all respects ordained and licensed regularly as a clergyman of the church to which I belong."

The witness exhibits a license from the Minister of the Interior to solemnize marriage in which he is entitled "Elder," the witness saying that the Minister of the Interior asking him if he would be styled "Reverend," the witness had replied that he would be styled "Elder."

Also exhibited a certificate that "Elder Henry P. Richards has been duly appointed to a mission to the Sandwich Islands, to preach the Gospel and administer all the ordinances thereof pertaining to his office, etc." Dated Salt Lake City, Territory of Utah, November 29, 1876, signed by Brigham Young and two others, as the "First Presidency."

On cross-examination the witness said: "I believe in the revelation contained in the New Testament; I believe in other revelations since then; I am not a Mohammedan; I don't accept the Koran; there are many revelations we believe that have been given through Joseph Smith, the founder of the church; there are no later revelations than those published in the pamphlet (above spoken of) ; we believe all that God has revealed, and that He will yet reveal more than He has revealed; we preach faith, repentance and baptism by immersion, for the remission of sins and the laying on of hands for the reception of the Holy Ghost; those are what we term the first principles of the Gospel as taught by our Savior Jesus. Christ; we claim there are Apostles now, succeeding the Apostles of Christ, naming twelve men; we believe the Book of Mormon to be a revelation written by the prophet; I am one of the travelling Elders of the church; polygamy is believed in by the church; I don't know of any of our church sites being taxed."

Direct examination resumed. "We are not authorized to practice polygamy, except at the head-quarters of the church; we believe if it was necessary for the Lord to speak, that He would communicate as He did of old; I have no other business here than this ministry of our church; I am supported by the members of our denomination resident here."

Hanai, a witness for defendant, testifies that he was in charge of the Mission Church site in Waikiki, and that to his knowledge it had not been assessed during his time, three years.

The following is the creed exhibited by the defendant: "We believe in God, the Eternal Father, and in His Son Jesus Christ, and in the Holy Ghost; we believe that men will be punished for their own sins, and not for Adam's transgression; we believe that through the atonement of Christ all mankind may be saved by obedience to the laws and ordinances of the Gospel; we believe that these ordinances are, first, faith in the Lord Jesus Christ; second, repentance; third, baptism by immersion for the remission of sins; fourth, laying on of hands for the Gift of the Holy Ghost; we believe that a man must be called of God, by prophecy, and by laying of hands by those who are in authority to preach the Gospel and administer in the ordinances thereof; we believe in the same organization that existed in the Primitive Church, viz., Apostles, prophets, pastors, teachers, evangelists, etc.; we believe in the gift of tongues, prophesy, revelation, visions, healing, interpretation of tongues, etc.; we believe the Bible to be the word of God, as far as it is translated correctly; we also believe the Book of Mormon to be the word of God; we believe all that God has revealed, all that He does now reveal, and we believe that He will reveal many great and important things pertaining to the Kingdom of God; we believe in the literal gathering of Israel, and in the restoration of the Ten Tribes; that Zion will be built upon this continent; that Christ will reign personally upon the earth, and that the earth will be renewed and receive its paradisaic glory; we claim the privilege of worshipping Almighty God according to the dictates of our conscience, and allow all men the same

privilege, let them worship how, what or where they may; we believe in being subject to kings, presidents, rulers and magistrates, in obeying, honoring and sustaining the law; we believe in being honest, true, chaste, benevolent, virtuous, and in doing good to all men; indeed, we may say, that we follow the admonition of Paul, we believe all, things, we hope all things, if there is anything virtuous, lovely or of good report, or praise-worthy, we seek after these things."

Taking the testimony to be true, and there is nothing offered to contradict it, why should not a Mormon Minister be held for the purposes of this statute to be a Christian Minister? I find no difficulty in holding that the defendant is a minister. The counsel for the Crown argued from his taking the title of "Elder," and not "Rev.," that he had disclaimed holding ministerial office. But he testifies that such is the designation of a minister or clergyman in his denomination, and that he is a clergyman or minister. It does not appear why the use of the term "Rev." should be the test of the class of persons intended by the statute. It is the custom of some other denominations to style their ministers "Elder." The Baptists and Methodists do this to a considerable extent. The ministers of the Roman Church are usually styled "Father."

It is equally clear from defendant's testimony, that he is in the exercise of his calling. He has come to this Kingdom for that purpose. He exercises no other employment, and he is supported by the people of his denomination for the reason that he gives them his time and labor in exercising the ministerial office for them. The evident intention of the law is to exempt Christian ministers from the burden of taxes, on the ground that they must be supported by portions of the community, and to tax them is to impose an additional tax on the public in the support of religion and morals. For the same reason church sites are exempt. The question remains, is the defendant, being a Mormon Minister, a Christian Minister? Upon the proofs offered and the creed presented, he must *prima facie* be considered such. He believes in Christ and preaches Him.

The church is styled the Church of the Lord Jesus Christ. They accept the Old and New Testament.

It was urged, *per contra,* why this is not a denomination of Christians:

First, Because they accept other revelations than those contained in the Holy Scriptures.

The Roman Catholics must be considered a Christian denomination, yet they receive largely authorities and revelations outside the canon of the Scriptures, the authority of the Fathers and of councils. The dogma of the infallibility of the Pope may be considered as implying a power of revelation existing in the priest, who may have been elected to the head of their church, for his infallible utterances are not supposed to be a repetition of texts of the Holy Scriptures, to which, in Christian belief, he can add no sanction, but of something else not contained therein—a revelation. The same church accepts many revelations, from time to time—for a modern instance, the revelations to a nun at Lourdes, in France. On credence and sanction of this church, a shrine was established and a costly church built to our Lady of Lourdes, to which thousands of pilgrims resort. Every miracle believed to have been wrought by bones and relics of saints is a belief in something beyond the canon of the Scriptures. If the Mormons accept the Bible and believe in Christ, and believe also in the revelations of Joseph Smith, they must equally as Roman Catholics be considered a Christian denomination.

In Robbins' Religion of all Nations, page 6, it is said: "The religious world is divided into four grand systems, viz.: Christianity, Judaism, Mohammedanism and Paganism. Christianity is the religion of those who believe that Jesus Christ is the true Messiah and the Savior of men, and who receive the Holy Scriptures of the Old and New Testaments as the word of God. Judaism, of all those who still look for a promised Messiah. Mohammedanism, of all those who acknowledge Mohammed for a true prophet. Paganism, of all

those who have not the knowledge of the true God, but worship idols.

The only people who may not be classed under one or the other of these four divisions are the Deists and the Atheists, the latter differing from them all in owning no religion, and the former in owning no Divine revelation as the foundation of their religion." Cited in *Hale vs. Everett*, 53 N. H., 9.

The second reason why the Mormon Minister should not be included, was the tenet of polygamy.

We must proceed upon the proofs. The testimony is that the Mormons do not preach it here nor practice it here; and it does not appear that the subjects of this Kingdom are led to go abroad to practice it. It is not proved or shown inferentially that the Mormon doctrines in regard to marriage here tend to immorality. It is well known to us all, that the Mormon system leads in Utah to a practice of plural marriages which would not be tolerated here. Let that be so, still until it is shown by proof that the Mormons of this Kingdom are affected in their conduct by this doctrine, it will not be a ground for excluding them from the privilege accorded to other denominations professing Christianity. This may be illustrated by a reference again to the Roman Catholic denomination. The doctrine of their church supports an inquisition which shall force men by unspeakable tortures and death to profess an accord with their faith. The civil power of this Kingdom does not permit the exercise of this coercion here. It has been suppressed for the most part in all countries, yet this church, which professes immutability and infallibility, must be considered to hold to the theory. In Spain and in Austria, under the operation of Roman Catholic doctrine, the preaching of the Gospel as known to the Christian world, other than the Catholics, is either greatly hampered or totally suppressed. In the countries under Catholic rule, an *Index Expurgatorius* suppresses some of the best and truest literature of the time. These things which are subversive of freedom and liberty of conscience are not practiced here, and we do not therefore exclude the church which

supports, teaches and practices them elsewhere from the defini-
tion of a Christian denomination, and the Mormon must stand
on the same ground. Judgment for the defendant.

*E. Preston* (Attorney-General), for plaintiff.

*A. S. Hartwell,* for the defendant.